# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Rodney J. Goich,

              Petitioner,

v.

Warden Birkholz,

              Respondent.

Civ. No. 19-3064 (ECT/BRT)

**REPORT AND RECOMMENDATION**

Rodney J. Goich, Reg. No. 08030-091, Federal Prison Camp, P.O. Box 1000, Duluth, MN 55814, *pro se* Petitioner.

Ana H. Voss, Esq., Andrew Tweeten, Esq., and Ann M. Bildtsen, Esq., United States Attorney's Office, counsel for Respondent.

BECKY R. THORSON, United States Magistrate Judge.

This matter is before the Court on Petitioner Rodney J. Goich's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241. (Doc. No. 1, Pet.) In the Petition, Petitioner alleges that he was given an unfairly harsh sentence when he was disciplined by prison authorities for the prohibited act of the use of any drugs or related paraphernalia, not prescribed for the individual by the medical staff. (*Id.*; *see* Doc. No. 7-4, Wilson Decl., Ex. D.) Respondent submitted a Response on February 18, 2020. (Doc. No. 6.) Petitioner did not file a Reply. For the reasons that follow, this Court recommends the Petition for a Writ of Habeas Corpus be denied.

**I.     Background**

Petitioner is presently incarcerated at Federal Prison Camp – Duluth ("FPC-Duluth") where he is serving a 78-month term of imprisonment (plus five years of supervision) for Conspiracy to Possess With Intent to Distribute Methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1), and 846(b)(1)(A). (Doc. No. 7, Wilson Decl. ¶ 7, Ex. B.) He has a projected release date of November 23, 2020, via a good conduct time release. *Id.*

On November 27, 2018, Petitioner was provided a copy of Incident Report No. 3196037 for a violation of Code 112, use of any drugs or related paraphernalia, not prescribed for the individual by the medical staff.[1] (Wilson Decl. ¶ 10, Ex. D.) That Incident Report states that at approximately 6:10 a.m. on November 27, 2018, "SIS Staff received Pharmacy confirmation of an unauthorized positive urine sample test for buprenorphine provided by [Petitioner]." (Wilson Decl., Ex. D.) FPC-Duluth's pharmacist, R. DeFrance, confirmed that Petitioner was not prescribed any medications that would result in a positive test result for buprenorphine. (Wilson Decl., Exs. D, E at 5.)

At the time he was given the Incident Report, Petitioner was advised of his rights, indicated that he understood them, and was read the body of the report. (*Id.*) Petitioner replied, "No comment." (*Id.*) The investigating officer referred the Incident Report to the

---

[1]     Petitioner attaches Incident Report No. 3193186, dated November 17, 2018, also for a Code 112 violation. (Doc. No. 2, Pet.'s Ex. A.) This incident report, however, was expunged. (Wilson Decl. ¶ 9.) Additionally, Respondent notes that incident Report No. 3196037 was itself edited to correct a clerical error. (*See id.* ¶ 12.)

Unit Disciplinary Committee ("UDC") for further proceedings. (*Id.*) On November 29, 2018, the UDC held an initial hearing regarding Incident Report No. 3196037. (Wilson Decl. ¶ 15, Ex. E.) Again, Petitioner stated that he had "no comment." (*Id.*) The UDC referred the matter to the Disciplinary Hearing Officer ("DHO") for a hearing. (*Id.*)

On December 13, 2018, the DHO conducted a hearing on Incident Report No. 3196037. (Wilson Decl. ¶ 16, Ex. G.) Petitioner did not request to have a staff representative present, and did not call any witnesses. (*Id.* ¶ 15, Exs. G, H.) The DHO subsequently issued a written report, a copy of which was delivered to Petitioner on January 1, 2019. (*Id.* ¶ 16, Ex. H.) According to the DHO report, Petitioner stated, "I'm guilty of using Suboxone. I feel terrible about it. I let down my family and the staff." (*Id.*) The DHO did not consider any evidence beyond the Incident Report and the supporting documentation and investigation. (*Id.*)

The DHO found that Petitioner committed an act prohibited by Code 112 – use of any drugs or related paraphernalia, not prescribed for the individual by the medical staff. (Wilson Decl., Ex. H.) The DHO sanctioned Petitioner as follows: (1) disallowance of 27 days good conduct time; (2) 100 days forfeited non-vested good conduct time; (3) 7 days disciplinary segregation; (4) 180 days loss of commissary privileges; (5) 180 days loss of phone privileges; (6) 180 days loss of visiting privileges; and (7) 90 days impound of personal property. (*Id.*) Petitioner was also given a $274.00 fine. (*See* Doc. No. 2, Pet.'s Ex. F.)

## II.     Jurisdiction and Venue

"Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). A habeas corpus petition is the appropriate vehicle for challenging a refusal to restore good-conduct time where restoration would shorten the prisoner's sentence. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *see also Portley-El v. Brill*, 288 F.3d 1063, 1066 (8th Cir. 2002) ("[T]he Court held in *Preiser* that habeas corpus . . . is the exclusive federal remedy when a . . . prisoner seeks restoration of good time credits taken away by a prison disciplinary proceeding."). Venue is appropriate because Petitioner is confined in this judicial district. *See Perkins v. Jett*, Civil No. 14-3426 (ADM/JSM), 2014 WL 5090057, at *1 (D. Minn. Oct. 9, 2014).

## III.    Analysis

Petitioner argues that he is entitled to habeas relief because he was denied due process and subjected to excessive, unfair disciplinary measures in violation of Bureau of Prison ("BOP") policy after being found guilty of an act prohibited by Code 112, use of any drugs or related paraphernalia, not prescribed for the individual by the medical staff. (Pet. 2–3, 7–9.) Petitioner also argues that he was treated more harshly than other inmates, implicating equal protection principles. (*Id.* at 2, 6–7.) Petitioner asks that his sanction be reduced to only the loss of 27 days good conduct time. (*Id.* at 8.) Respondent argues that Petitioner was afforded due process in his disciplinary hearing, his punishment was consistent with BOP regulations, and that he has failed to assert a colorable equal protection claim. (*See* Response.)

4

As a preliminary matter, this Court observes that Petitioner also challenges his monetary fine and the loss of phone, e-mail, and visiting privileges. (*See* Pet. 8; Pet.'s Ex. F.) Those claims, however, cannot be brought as part of a § 2241 habeas action as they do not seek to challenge the validity of Petitioner's sentence or the duration of his custody. *Spencer v. Marques*, No. 19-CV-94 (PJS/SER), 2019 WL 3893025, at *2 (D. Minn. July 17, 2019), *report and recommendation adopted*, No. 19-CV-94 (PJS/SER), 2019 WL 3890840 (D. Minn. Aug. 19, 2019) (citing *Kruger v. Erickson*, 77 F.3d 1071, 1073 (8th Cir. 1996) (per curiam)). Accordingly, this Court recommends that Petitioner's challenges to his monetary fine and loss of privileges be denied for lack of subject-matter jurisdiction. For the reasons that follow, this Court also recommends that the remainder of the Petition for Writ of Habeas Corpus be denied.

### A.   BOP's Disciplinary Program

The BOP has established guidelines for the imposition of discipline on inmates. 28 C.F.R. § 541.1. When BOP staff have reason to believe that an inmate committed a prohibited act, a staff member prepares an incident report describing the alleged violation of the disciplinary code and refers it for investigation. 28 C.F.R. § 541.5. (Wilson Decl. ¶ 3, Ex. A at 17–18.) The investigating officer ordinarily provides the inmate with a copy of the incident report and investigates the matter. *Id.*

Upon completion of an investigation, a UDC holds an initial hearing, ordinarily within five workdays after the incident report was issued. 28 C.F.R. § 541.7; (Wilson Decl. ¶ 4, Ex. A at 23–24). If the UDC finds the inmate committed the prohibited act, it can impose sanctions or refer the incident report to the DHO. (Wilson Decl. ¶ 4, Ex. A at

5

23.) If an inmate is charged with a "Greatest" or "High" severity act (Code 100 or 200 level charges), the UDC automatically refers the incident report to the DHO. (Wilson Decl., Ex. A at 23.) If the UDC refers an incident report to the DHO, it provides the inmate with a copy of the UDC's decision and advises the inmates of his rights at a DHO hearing. 28 C.F.R. § 541.7; (Wilson Decl. ¶ 4, Ex. A at 25). The DHO serves as an impartial hearing officer responsible conducting institutional disciplinary hearings and imposing sanctions. 28 C.F.R. § 541.8; (Wilson Decl. ¶ 5, Ex. A at 27, 33, 44–55). At a DHO hearing, an inmate is afforded the opportunity to have a staff representative, to make a statement, and to present witnesses and documentary evidence. 28 C.F.R. § 541.8; (Wilson Decl. ¶ 5, Ex. A at 27–32). An inmate is provided a written copy of the DHO's final decision. 28 C.F.R. § 541.8; (Wilson Decl. ¶ 5, Ex. A at 34).

      **B.**    **Due Process**

Depriving an inmate of good-time credit for disciplinary reasons "implicates a liberty interest that is protected by the Due Process Clause." *Espinoza v. Peterson*, 283 F.3d 949, 951 (8th Cir. 2002). Where a prison disciplinary hearing may result in the loss of good-time credit, due process demands that the inmate receive: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence he relied on and the reasons for the disciplinary action." *Superintendent v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563–67 (1974)).

The Due Process Clause also requires that "the findings of the prison disciplinary board [must be] supported by some evidence in the record." *Espinoza v. Peterson*, 283 F.3d 949, 951–52 (8th Cir. 2002). The "some evidence" standard is deferential to prison officials and "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Flowers v. Anderson*, 661 F.3d 977, 980 (8th Cir. 2011) (quotation marks omitted). "If there is any evidence in the record that could support the finding of the disciplinary authority, then the sanctions comport with due process." *Id.* (quotation marks omitted).

Here, Petitioner does not allege that these requirements were not satisfied. And, as explained above, the record reflects that he was afforded all the requisite procedural due process rights during the disciplinary process. Petitioner also does not challenge the DHO's finding that at least "some evidence" supported finding Petitioner guilty as to the Code 112 charge. To the contrary, Petitioner candidly admits his wrongdoing. (*See* Pet. 2.) As a consequence, this Court is satisfied that Petitioner received constitutionally adequate procedural safeguards prior to the imposition of discipline.

### C. Petitioner's Discipline

A Code 112 prohibited act is defined by the BOP as, "Use of any narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia, not prescribed for the individual by the medical staff." (Wilson Decl., Ex. A at 45); *see also* 28 C.F.R. § 541.3, Table 1. "The BOP's interpretation of its own regulation prohibiting possession of a hazardous tool is controlling unless it is plainly erroneous or inconsistent with the

7

regulation." *Ramos v. Fisher*, Civ. No. 13-1059 ADM/HB, 2014 WL 5206716, at *10 (D. Minn. Oct. 14, 2014).

The BOP's Inmate Discipline Program ("IDP") categorizes prohibited acts according to varying levels of severity, and it categorizes a Code 112 violation under the heading of "greatest severity," and prescribes appropriate sanctions. (Wilson Decl., Ex. A at 9, 11–16, 44–55.) The sanctions for a Code 112 violation therefore include, among other things, disallowance of up to 41 days good-conduct time, forfeiture of up to 100 percent of non-vested good-conduct time, disciplinary segregation for up to 12 months, loss of privileges (visiting, telephone, commissary, movies, recreation, etc.), impounding an inmate's personal property, and a monetary fine. (*Id.* at 45–46.)

Here, The DHO found Petitioner guilty of the Code 112 charged offense and sanctioned him with the loss of: (1) disallowance of 27 days good conduct time; (2) 100 days forfeited non-vested good conduct time; (3) 7 days disciplinary segregation; (4) 180 days loss of commissary privileges; (5) 180 days loss of phone privileges; (6) 180 days loss of visiting privileges; and (7) 90 days impound of personal property. (Wilson Decl. ¶ 18, Ex. H.) These sanctions are within the scope allowed by the BOP's policy concerning inmate discipline for "greatest severity" level prohibited acts. (*See* Wilson Decl. ¶ 20, Ex. A at 45–46.)

The DHO enjoys discretion to impose disciplinary sanctions, and the Court will uphold those sanctions unless the exercise of the DHO's discretion was arbitrary or unreasonable. *See Glouser v. Parratt*, 605 F.2d 419, 420–21 (8th Cir. 1979); *Hewlett v. Warden, FMC Rochester*, No. 18-CV-2293 (WMW/LIB), 2019 WL 3557628, at *5

(D. Minn. Apr. 30, 2019), *report and recommendation adopted sub nom. Hewlett v. Warden,* No. 18-CV-2293 (WMW/LIB), 2019 WL 3553411 (D. Minn. Aug. 5, 2019), *appeal dismissed*, No. 19-3234, 2020 WL 1862383 (8th Cir. Jan. 2, 2020). Accordingly, this Court concludes that the sanctions imposed by Petitioner were not excessive.

### D.   Equal Protection Claim

To the extent that Petitioner is alleging an equal protection claim based on the allegedly disparate sanctions received by other inmates for similar infractions, that claim also fails. "[T]he first step in an equal protection case is determining whether the plaintiff has demonstrated that [he] was treated differently than others who were similarly situated to [him]." *Klinger v. Dep't of Corr.*, 31 F.3d 727, 731 (8th Cir. 1994). If he is similarly situated to other inmates who are treated differently, the second step requires the plaintiff to show that the reason for the disparate treatment is "intentional or purposeful discrimination." *Id.* at 733.

Here, Petitioner has failed to allege a violation of his equal protection rights. First, the other inmates identified by Petitioner as receiving more favorable treatment are not similarly situated to him for purposes of the disciplinary sanctions imposed. Four of his comparators were charged with possession of a phone—not drugs—and the other was charged with possession of a phone, drugs, and tobacco. (*See* Pet.'s Ex. F.) And second, the record is devoid of evidence that Petitioner received a more severe sanction for discriminatory reasons. *See Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 815 (8th Cir. 2008). The record before this Court does not support a finding that BOP officials engaged

9

in any invidious discrimination. Instead, it appears that the discipline imposed on Petitioner was based on the evidence that he violated the BOP's rules.

In sum, based on the record, this Court concludes that Petitioner has failed to assert a viable equal protection claim.

### III.    Conclusion

For the foregoing reasons, this Court recommends that the Petition for a Writ of Habeas Corpus be denied.

## RECOMMENDATION

Based on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.   Petitioner's Petition for a Writ of Habeas Corpus (Doc. No. 1) be **DENIED**.


Date:  August 3, 2020

                                             *s/ Becky R. Thorson*
                                             BECKY R. THORSON
                                             United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Pursuant to Local Rule 72.2(b)(1), a party may file and serve specific written objections to this Report within **fourteen (14) days**. A party may respond to those objections within **fourteen (14) days** after service thereof. All objections and responses must comply with the word or line limits set forth in LR 72.2(c).